Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2586 | **DATE** | 5/22/2002 |
| **CASE TITLE** | Minch, et al. vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order denying defendant's motion to reconsider and granting its motion to amend the order to certify an immediate appeal under 28 U.S.C. Section 1292 (b).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 2 3 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 5/22/2002 | |
| | | | date mailed notice | |
| MPJ | courtroom deputy's initials | | MPJ6 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| DONALD DRNEK,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, an Illinois<br>Municipal Corporation,<br><br>        Defendant. | No. 01 C 0840 |

| | |
|---|---|
| JAMES D. MINCH, RICHARD A.<br>GRAF, and RICHARD COSENTINO,<br>individually, and on behalf of<br>a class of all individuals who<br>are similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO, an Illinois<br>Municipal Corporation,<br><br>        Defendant. | No. 01 C 2586 |

## MEMORANDUM OPINION AND ORDER

On March 25, 2002, I granted in part and denied in part the City's motion to dismiss the plaintiffs' age discrimination and due process complaints. *See Drnek v. City of Chicago*, 192 F. Supp. 2d 835 (N.D. Ill. 2002). The City moves to amend that order to include a certification of the following question for interlocutory appeal under 28 U.S.C. § 1292(b):

> whether allegedly illicit motives on the part of individual legislators and municipal officials for enacting a retirement plan that mandatorily retires police and fire personnel at age 63 and results in their replacement with younger workers can demonstrate subterfuge under section 623(j) of the ADEA.

Mot. at 5. I also treat the motion as one to reconsider in light of the City's primary reliance on a case that it did not cite in its underlying briefs. *See* Minute Order of 4/10/02.

## I. Motion to Reconsider

"Motions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the [underlying] motion. . . . Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). Nonetheless, "reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

The City challenges a very narrow part of my opinion: my consideration of the plaintiff's allegations of discriminatory animus in deciding that there were questions of fact precluding dismissal. At oral argument, the plaintiffs produced allegations that the City's true purpose for enacting the mandatory retirement ordinance was to clear out older employees to make room for

2

promotional opportunities for younger employees. The City argued, then and now, that I could not look beyond the face of the ordinance to determine whether it was a subterfuge to evade the purposes of the ADEA. I rejected the City's reliance on *Pacific Gas Electric Co. v. State Energy Resources Conservation and Development Commission*, 461 U.S. 190 (1983), for the proposition that inquiry into the motives of the legislators' state of mind was never permissible. I held that *Pacific Gas* was distinguishable on two grounds: (1) that subterfuge is a factual question, whereas preemption, the issue in *Pacific Gas*, is a matter of law; and (2) that the legal standards in *Pacific Gas* and under the ADEA were different, and that the "true motive" of the legislators does matter for the purposes of § 623(j)(2) of the ADEA. *See* 192 F. Supp. 2d at 844. The City argues that I erred in distinguishing *Pacific Gas* and points to *Bell v. Purdue University*, 975 F.2d 422 (7th Cir. 1992), which it did not cite in any of its briefs on the underlying motion. The Seventh Circuit in *Bell*, when presented with anecdotal evidence that the defendants preferred younger employees, stated that "the defendants cannot be liable for their motives if their conduct has not evaded the ADEA's prohibitions." *Id.* at 429.

*Bell* involved an application of the Supreme Court's decision in *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158 (1989), to a challenge to a fringe benefit plan under § 623(f)(2) of the ADEA, rather than § 623(j), which is the provision

3

at issue in this case. Section 623(a)(1) of the ADEA prohibits the failure or refusal to hire any individual, termination, or other discrimination "with respect to [the] compensation, terms, conditions, or privileges of employment, because of such individual's age." At the time *Betts* was decided, § 623(f)(2) provided an exemption from § 623(a)(1), and provided that it was not unlawful to observe the terms of a bona fide benefit plan that was not a subterfuge to evade the purposes of the ADEA, with the proviso that no plan could require or permit age-based involuntary retirement. *Betts*, 492 U.S. at 165-66. In *Betts*, the Court rejected an administrative interpretation of "not a subterfuge" that put the burden on the employer to demonstrate a cost-based justification for differential treatment of older employees, *id.* at 170-75, then set about the more difficult task of defining "subterfuge" for the purposes of § 623(f)(2).

Noting that the purposes of the ADEA could not be separated from its substantive provisions, the Court held that a plan enacted after the enactment of the ADEA "cannot be a subterfuge to evade the ADEA's purpose of banning arbitrary age discrimination unless it discriminates in a manner forbidden by the substantive provisions of the Act." *Id.* at 176. Section 623(a)(1) is the primary enforcement mechanism of the ADEA, and the Court acknowledged that "[t]he phrase 'compensation, terms, conditions, or privileges of employment' in § [623](a)(1) can be read to

4

encompass employee benefit plans of the type covered by § [623](f)(2)," but it rejected this interpretation because it "would in effect render the § [623](f)(2) exemption nugatory with respect to post-Act plans. Any benefit plan that by its terms mandated discrimination against older workers would also be facially irreconcilable with the prohibitions in § [623](a)(1) and, therefore, with the purposes of the Act itself." *Id.* at 177.

Thus, in order to give effect to both § 623(a)(1) and § 623(f)(2), the Court concluded that § 623(f)2) "exempt[s] the provisions of a bona fide benefit plan from the purview of the ADEA so long as the plan is not a method of discriminating in other, non-fringe-benefit aspects of the employment relationship." *Id.* After considering the legislative history, the Court concluded that "this result permits employers wide latitude in structuring employee benefit plans, [but] it does not render the 'not a subterfuge' proviso a dead letter." *Id.* at 180. It gave two examples of possible actionable subterfuges: (1) "adopt[ing] a [fringe benefits] plan provision formulated to retaliate against . . . an employee" who had "participated in the filing of any age-discrimination complaints of litigation" in violation of § 623(d), which prohibits retaliation; and (2) "an employer's decision to reduce salaries for all employees while substantially increasing benefits for younger workers," *i.e.*, "utilizing [the] benefits plan as a subterfuge for age-based discrimination in wages, an activity

5

forbidden by § [623](a)(1)." *Id.* The Court concluded by stating that the defendant did not have a duty to prove the absence of subterfuge; instead, the existence of subterfuge was effectively an element of the plaintiff's *prima facie* case on which it bore the burden of proof. *Id.* at 181.

The Seventh Circuit in *Bell* recited these standards and applied them to an employee challenge to a pension benefit plan that discontinued pension contributions for employees above the age of 65 even if those employees continued to work. Noting the two examples of subterfuge from *Betts*, the court held that the plaintiffs had not produced any evidence that would bring them within the purview of the examples. 975 F.2d at 429. The court rejected "statements and anecdotal evidence that some officials at Purdue preferred younger faculty," stating that, even if a jury could infer that the cut in contributions to the pension plan was intended to weed out older employees, "the defendants cannot be liable for their motives if their conduct has not evaded the ADEA's prohibitions." *Id.* With respect to the second *Betts* example, the court noted that the hike in fringe benefits to younger employees did not violate the ADEA, it was the underlying wage-cut that it camouflaged that did violate the ADEA. *Id.* In that regard, the plaintiffs had "offered no evidence that the fringe benefit cut in this case is anything more than meets the eye--an age differential in fringe benefits which is permitted under the ADEA." *Id.* Because

6

there was no extrinsic proof of a violation of another substantive provision outside the scope of the exception, the court declined to find subterfuge even in the face of evidence of discriminatory animus.

The City argues that the Seventh Circuit's language and reasoning in *Bell* precludes the plaintiffs in this case from relying on evidence of discriminatory motives of individual City officials to establish subterfuge. The City asks me to follow *Bell* and hold that, because there is no evidence of a violation of the age limits in § 623(j)(1), there can be no subterfuge. They argue that the mandatory retirement ordinance cannot be a subterfuge as a matter of law, regardless of evidence of intent to discriminate on the basis of age, because § 623(j) makes discriminatory age-based retirement for public safety officials legal. The City argues that an extension of *Betts* and *Bell* to § 623(j)(2) means that any intent to discriminate cannot make facially lawful actions unlawful if those actions fall within the exception in § 623(j)(1).

Cases construing § 623(j) have by and large adopted the *Betts* definition of "subterfuge" as a "scheme, plan, stratagem, or artifice of evasion." *See, e.g., Glennon v. Village of South Barrington*, No. 00 C 1264, 2000 WL 1230494, at *3 (N.D. Ill. Aug. 25, 2000). *See also Knight v. Georgia*, 992 F.2d 1541, 1545-46 (11th Cir. 1993) (holding that, because previous § 623(f) and current § 623(j) both contain term "subterfuge," it was "appropriate to draw

upon" case law interpreting § 623(f), and that the "body of law [construing § 623(f)] should properly be consulted to give meaning to the term 'subterfuge' as it appears in § [623](j)"). This case presents the question of the logical limits of the application of judicial interpretations of § 623(f) to § 623(j).

There is some consistency between the City's interpretation here and the *Betts/Bell* interpretation. For example, the City argued in the reply to its original motion that construing "subterfuge" to mean that any discharge on the basis of age is a subterfuge to evade the purposes of the ADEA because it violates § 623(a)(1) would eviscerate the exception in § 623(j), which says that mandatory retirement on the basis of age is legal. The Supreme Court rejected a similar interpretation of subterfuge in the context of § 623(f). *Betts*, 492 U.S. at 177. However, the Supreme Court noted specifically that its interpretation did "not render the 'not a subterfuge' proviso a dead letter." *Id.* at 180.

However, the City's interpretation, which is essentially an extension of the *Betts/Bell* interpretation of § 623(f), would render the "not a subterfuge" provision of § 623(j), if not dead, at least moribund. An interpretation that requires a violation of the timing requirements in § 623(j)(1) in order to find that the challenged action is a subterfuge under § 623(j)(2) collapses the two inquiries. This circular reading of "not a subterfuge" in § 623(j)(2) would provide no protection that is not found elsewhere

8

in the statute. By contrast, the exception in § 623(f) related only to fringe benefits, but left undisturbed all of the non-fringe aspects of the employment relationship that are protected by § 623(a), the "ADEA's primary enforcement mechanism." *Betts*, 492 U.S. at 176. Section 623(j), however, exempts employers entirely from the protections of § 623(a). That is, if an employee is mandatorily retired, there is nothing left of the employment relationship to protect. Thus the second example of a subterfuge in *Bell* could never apply to a claim under § 623(j). This interpretation of § 623(j) is circular and self-referential, and would render the "not a subterfuge" requirement empty language, because any mandatory retirement ordinance that complied with the requirements of § 623(j) would, as a matter of law, not be a subterfuge. *See Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1272 (7th Cir. 1993) ("[A] court should not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous").

There is still the retaliation example from *Betts*, and a mandatory retirement ordinance that was enacted to retaliate against an employee who had complained of age discrimination could be a subterfuge under that example, but if that were the only manner in which a plaintiff could demonstrate subterfuge, then the remedies in § 623(d) and § 623(j) would be redundant. *See In re Merchants Grain, Inc.*, 93 F.3d 1347, 1354 (7th Cir. 1996) (Courts should "construe statutes in the context of the entire statutory

9

scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant."). The Supreme Court stated in *Betts* that its examples were "not exhaustive, but suffice to illustrate the not-insignificant protections provided to older employees by the subterfuge proviso in the § [623](f)(2) exemption." 492 U.S. at 180. Under a similar interpretation of § 623(j), however, the subterfuge provision provides no protection that is not already provided elsewhere in the ADEA, and would be rendered utterly meaningless.

It was for this reason that I held that evidence of subjective intent to discriminate on the basis of age was relevant to the question of subterfuge under § 623(j). Section 623(j) only applies if a mandatory retirement plan both meets the age requirements in § (j)(1) *and* is not a subterfuge under § (j)(2). The City's interpretation based on *Bell*, that facial compliance with (j)(1) precludes me from looking elsewhere for evidence of subterfuge, would eviscerate the requirement that the plan not be a subterfuge. Therefore, I decline to apply the reasoning of *Bell* under § 623(f) to this case under § 623(j). *Bell* does not address *Pacific Gas*, or the reasons that I gave for distinguishing it and considering potential subjective proof of subterfuge, so it is not a basis for reconsideration of the narrow issue presented by the City in its motion. However, I will consider separately the propriety of certifying an interlocutory appeal under 28 U.S.C. § 1292(b).

II. Motion to Certify an Interlocutory Appeal

The denial of a motion to dismiss is not a "final decision" from which an immediate appeal is available under 28 U.S.C. § 1291. *Cherry v. University of Wisc. Sys. Bd. of Regents*, 265 F.3d 541, 546 (7th Cir. 2001). However, § 1292(b) provides for interlocutory appeal of certain otherwise non-appealable orders. There are four statutory requirements: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Board of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphases in original). All four criteria must be satisfied before I may certify an order for immediate appeal. *Id.*

The City asks me to certify the following question: whether allegedly illicit motives on the part of individual legislators and municipal officials for enacting a retirement plan that mandatorily retires police and fire personnel at age 63 and results in their replacement with younger workers can demonstrate subterfuge under section 623(j) of the ADEA. So framed, this is not a controlling question, because it is too early in the lawsuit to determine that this is the *only* type of evidence of subterfuge that the plaintiffs could discover. I ordered the plaintiffs to come forward with any facts, consistent with Fed. Rule Civ. P. 11, to support their allegations of subterfuge in order to determine whether this case was distinguishable from *Kopec v. City of Elmhurst*, 193 F.3d 894

(7th Cir. 1999). *See* Minute Order of 3/4/02. I did not convert the motion to one for summary judgment, requiring the plaintiffs to come forward with all of the evidence necessary to make out a claim.

Nonetheless, I am of the opinion that there is a controlling legal question[1]: whether a plaintiff can demonstrate subterfuge under § 623(j)(2) with *any* kind of evidence if there is no violation of § 623(j)(1). This is a pure question of law because it involves the construction of a statutory provision. *See Ahrenholz*, 219 F.3d at 676. It is controlling because I held that the plaintiffs could not make out a claim under § 623(j)(1), and both the ADEA claim and the remaining due process claims of the firefighter plaintiffs depend on the plaintiffs' ability to state a claim under § 623(j)(2). *See* 192 F. Supp. 2d at 848. It is contestable because, so far as I can tell, it is a question of first impression. One other court in this district has considered circumstantial evidence of subterfuge and found a genuine issue of fact precluding summary judgment, but it did not discuss whether the mandatory retirement ordinance complied with the requirements of § 623(j)(1). *See Glennon v. Village of S. Barrington*, No. 00 C

---

[1] 28 U.S.C. § 1292(b) does not require that I accept the City's proposed question for certification. That statute provides that "[w]hen a district judge, in making [an otherwise non-appealable order in a civil case], shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for a difference of opinion . . . , [s]he shall so state in writing in such order."

1264, 2002 WL 432681, at *2 (N.D. Ill. Mar. 18, 2002) (Leinenweber, J.). The *Betts/Bell* interpretation of § 623(f) suggests a different outcome, though I find those cases distinguishable. Finally, an immediate appeal promises to speed up the litigation because it defines the proper scope of information, if any, that the parties may seek in discovery. A contrary decision would be dispositive, and would obviate the need for discovery. Although I DENY the motion for reconsideration, I GRANT the motion to amend the order to certify an immediate appeal under 28 U.S.C. § 1292(b).

ENTER ORDER:

*Elaine E. Bucklo*

Elaine E. Bucklo
United States District Judge

Dated: May 22, 2002

13